AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

**FILED**
**RICHARD W. NAGEL**
**CLERK OF COURT**

3/31/22H

| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)*<br>3216 MARION PLACE<br>COLUMBUS, OHIO 43227<br>INCLUDING ALL OUTBUILDINGS & CURTILAGE | )<br>)<br>)<br>)<br>) | Case No.<br><br>3:22-MJ-98 |

**U.S. DISTRICT COURT**
**SOUTHERN DIST. OHIO**
**WEST. DIV. DAYTON**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| | SEE ATTACHMENT C |

The application is based on these facts:

SEE AFFIDAVIT IN SUPPORT

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA GREGORY E. ENGELHARD, USDA-OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: ___3/31/22___

City and state: DAYTON, OHIO

_____
Peter B. Silvain, Jr.
United States Magistrate Judge
JUDGE

### ATTACHMENT A

The residence of **MARQUIS DESADE FARMER**, and surrounding curtilage, is located at **3216 Marion Place, Columbus, Ohio 43227**. It consists of a two-story multi-family apartment complex, having a light-colored stucco exterior, with blue exterior apartment doors. Address blocks "3216/3218" are posted directly above the common exterior door that leads to both upstairs apartments, with apartment door to 3216 located at the top of stairs on the left.



ATTACHMENT-B

ITEMS TO BE SEIZED FROM

*(a)*     *The residence of **MARQUIS DESADE FARMER**, located at 3216 Marion Place, Columbus, Ohio 43227; and the below listed vehicle connected to FARMER.*

*(b)*     *A **2010 Mercedes-Benz S550, black in color, Ohio registration 1PRITIB, (VIN# WDDNG7BB6AA357807**) registered to CATHY FARMER, 2183 Margo Road, Columbus, Ohio 43229. The 2010 Mercedes-Benz is driven daily by **MARQUIS DESADE FARMER** from his personal residence to various locations in effort to conduct the submissions of fraudulent SNAP EBT applications and the recertification process of said fraudulent accounts. **MARQUIS DESADE FARMER** is the sole driver of this vehicle.*

***From June 1, 2011 to present***

- *Any and all records corresponding to* Electronic Benefits Transfer (EBT) cards, all Supplemental Nutrition Assistance Program "SNAP" (formerly referred to as the federal food stamp program), coupons, documents, forms, applications, etc., Women, Infant and Children (WIC) Program Benefits. Including money, coupons, delivery verification receipts, other documents, food, or other property received directly or indirectly pursuant to section 17 of the Child Nutrition Act of 1966 80 Stat. 885, 42 U.S.C. 1786, as amended: all cards, codes, account numbers, or other means of access that can be used alone or in conjunction with another access device to obtain payments, allotments, benefits, money, goods, or other things of value or that can be used to initiate a transfer of funds pursuant to the Food Stamp Act of 1977 91 Stat. 958, 7 U.S.C. 2001 et seq. or any supplemental food program administered by any department of the State of Ohio or any county or local agency pursuant to section 17 of the Child Nutrition Act of 1966 80 Stat. 885, 42 U.S.C. 1786.

- Any and all records and/or correspondence relating to the ***Ohio Department of Jobs & Family Services*** or their preceding agency and any other social service related entity throughout the United States, including but not limited to both the **Food and Nutrition Service (FNS) and Social Security Administration (SSA).**

- All electronic point of sale (POS) or other devices used to redeem EBT benefits and/or used to complete both EBT and credit card transactions with the same POS device; to include customer/client correspondence in the form of merchant agreement applications, monthly statements and payment information.

- Books, records, invoices, receipts, records of real estate transactions, deeds, leases, bank statements and records relating to ***MARQUIS DESADE FARMER;*** to include passbooks relating to money drafts, letters of credit, money orders, generic debit cards, gift cards, stock or bond certificates, bank drafts and cashier's checks, bank checks, safe deposit box keys, money wrappers, vehicle titles and registration documents, and other items evidencing the obtaining, secreting, transfer, and /or expenditure of money and/or safes.

- Bank statements and records relating to ***MARQUIS DESADE FARMER & JP Morgan Chase from January 1, 2016 to present.***

- Bank statements and records relating to *MARQUIS DESADE FARMER & Fifth Third Bank from JP Morgan Chase from January 1, 2016 to present.*

- All U.S. currency/cash derived from SNAP EBT fraud, consisting of $100.00 (one-hundred dollars) or more, located in one primary location.

- Addresses and/or telephone books, rolodex indexes and any papers reflecting names, to include personal identifying information (PII), such as social security number, date of birth and/or other PII, including addresses, telephone numbers, paper numbers, fax numbers and/or telex numbers related to any individual potentially identified as an identity theft victim and/or co-conspirator and may include sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

- Original and /or copies of any and all federal and state tax returns, monthly sales tax reports and/or local tax reports listing *MARQUIS DESADE FARMER from January 1, 2016 to present.*

- Indicia of occupancy, residency rental and/or ownership of the premises described herein, including but not limited to utility and telephone bills, canceled envelops, rentals, purchase or lease agreements and keys.

- Any and all types of identification, including but not limited to driver's licenses, social security cards and passports in the name of *individuals potentially identified as identity theft victims and/or co-conspirators.*

- Passports held in the name of *MARQUIS DESADE FARMER.*

- All documents and correspondence involving *AGLER MARKET LLC, dba AGLER MARKET*, and business owners *BEYENE T. GOITAM and MAKDA BERHANE,* to further include items relating to homeless shelters and periods of incarceration in the name of *MARQUIS DESADE FARMER and/or other individuals potentially identified as identity theft victims and/or co-conspirators.*

- All digital media devices, including but not limited to digital cameras, cellular phones, video cameras, et cetera. Any cellular telephones linked to *MARQUIS DESADE FARMER, and/or other individuals potentially identified as identity theft victims and/or co-conspirators* on premise during the execution of said search warrant; to include downloading all relevant information, including but not limited to stored information, stored photographs and videos, text and multi-media messaging, call activity and stored contacts, contained in cellular telephones.

- Property that constitutes evidence of the commission of a criminal offense. Property designed or intended for use, which is or has been used as the means of committing a criminal offense.

- Contraband, the fruits of crime, or things otherwise criminally possessed.

Due to the fact that some or all of the above- described records may be stored by means of a computerized information system, the items and materials to be searched shall include:

(1) Any and all information and/or data stored in the form of magnetic or electronic Coding on computer media or on media capable of being read by a computer or with the aid of computer-related equipment. This media includes floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, videocassettes, and other media that are capable of storing magnetic coding.

(2) Any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer-related electronic devices.

(3) Any and all instructions or programs stored in the form of electronic or magnetic media, which are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals directly or indirectly either via telephone lines, radio, or other means of transmission.

(4) Any and all written or printed material, which provides instructions or examples concerning the operation of a computer system, computer software, and/or any, related device.

(5) If any computer has to be seized, the computer and its components may be searched and analyzed at an offsite location as authorized by the search warrant issued pursuant to this affidavit.

The opening and search, and removal, if necessary, of any and all personal safes, locked receptacle or compartment, business safe, storage devices, cabinets, cash registers, strong boxes, file cabinets, desks, drawers, wallets, brief cases, attaches, and any other locker or unlocked container; as some or all of the property hereto describe may be maintained. Special Agents of the Office of Inspector General, United States Department of Agriculture, are authorized to use the services of locksmiths, who may not necessarily be federal law enforcement officers, in order to properly open and search said safe or other locked receptacle or compartment on the premises, or off of the premises, if necessary, for the purpose of obtaining any property described heretofore, provided, that such locksmiths operate under the direction, control and supervision of Special Agents of the Office of Inspector General.

**ATTACHMENT C**

| _Code Section_ | _Offense Description_ |
|---|---|
| 18 U.S.C. §§ 371 & 1349 | Conspiracy to Defraud the United States and Commit Wire Fraud |
| 7 U.S.C. § 2024(b) & (c) | Unauthorized Use, Transfer, Acquisition or Possession of SNAP Benefits |
| 18 U.S.C. § 641 | Theft of Public Money |
| 18 U.S.C. § 1001 | Making a False Statement |
| 18 U.S.C. § 1029 | Access Device Fraud |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |
| 42 U.S.C. § 1383(a) | Supplemental Security Income Fraud |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR SEARCH AND ARREST WARRANTS**

Your Affiant, Gregory E. Engelhard, after being first duly cautioned and sworn, makes the

following statement:

1.      I am currently a Special Agent (SA) with the United States Department of

Agriculture (USDA), Office of Inspector General (OIG).  I have been so employed since March,

2005.  I hold both a Bachelor's and Master's degree and am a graduate of the Federal Law

Enforcement Training Center, in Glynco, GA.  I have over 28-years of law enforcement experience

as both a local police officer in the State of Ohio, and as a SA with the USDA-OIG.  While

employed as a SA with the USDA-OIG,  I have participated in a wide variety of investigations, to

include:  Food Stamp Program fraud (currently referred to as the Supplemental Nutrition

Assistance Program or "SNAP"); Women, Infant and Children (WIC) Food and Nutrition Program

fraud; money laundering schemes; embezzlement schemes; organized extortion rings; smuggling

schemes; and illicit animal fighting operations.  I have received extensive and specialized training

in the investigation of financial crimes, the illicit use of access devices, wire fraud schemes and

money laundering activities.

2.      I am presently  a contributing member of the Southern District of Ohio Financial

Crimes Task Force (SDOHFCTF).  This task force is made up of criminal investigators drawn

from a variety of state and federal agencies to include:  the United States Secret Service (USSS),

the Social Security Administration, Office of the Inspector General (SSA-OIG) and the Ohio

Department of Public Safety (ODPS) Investigative Unit.  Since on or about July 2021, this task

force has been actively  investigating various individuals connected to a suspected criminal

conspiracy designed to defraud the SNAP and Supplemental Security Income Programs.  The

collection of suspected crimes include: Conspiracy to Defraud the United States and commit Wire

Fraud, in violation of 18 U.S.C. §§ 371 and 1349; the Unauthorized Use, Transfer, Acquisition,

Alteration, or Possession of SNAP benefits, in violation of 7 U.S.C. § 2024 (b) and (c); Theft of Public Money, in violation of 18 U.S.C. § 641; Making False Statements, in violation of 18 U.S.C. § 1001; Access Device Fraud, in violation of 18 U.S.C. § 1029; Wire Fraud, in violation of 18 U.S.C. § 1343; Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and Supplemental Security Income Fraud, in violation of 42 U.S.C. § 1383(a). It is believed that in excess of $500,000 in U.S. Government funded benefits have been stolen by these individuals.

3.    The facts set forth in this affidavit are based upon your Affiant's personal knowledge; information provided by other law enforcement officials knowledgeable of this investigation; witness interviews, together with other information and documents which have been collected relevant to subject investigation. The information contained in this affidavit does not reflect all facts known to the task force. The information contained in this affidavit is submitted for the limited purpose of establishing probable cause to obtain four (4) search warrants and an arrest warrant for **MARQUIS DESADE FARMER.** The four proposed search locations are as follows:

A.    The residence of **MARQUIS DESADE FARMER**, and surrounding curtilage, located at **3216 Marion Place, Columbus, Ohio 43227**. This premises consists of a two-story multi-family apartment complex, having a light-colored stucco exterior, with blue exterior apartment doors. Address blocks "3216/3218" are posted directly above the common exterior door that leads to both upstairs apartments, with the apartment door to 3216 located at the top of stairs on the left. (See Attachment "A").

B.    The residence of **BEYENE T. GOITAM** and **MAKDA BERHANE,** and surrounding curtilage, located at **8471 Rodebaugh Road, Reynoldsburg, Ohio 43068.** This premises consists of a two-story single-family residence with an attached two-car garage, with light-green exterior siding and gray trim. The numbers "8471" are displayed horizontally on a black mailbox which is located at the end of the adjoining driveway to this residence. (See Attachment "A").

C.    The commercial business establishment known as **AGLER MARKET,** and surrounding curtilage**, is located at 2043 Agler Road, Columbus, Ohio 43224.** This business premises consists of a one-story commercial building with a tan brick exterior, glass double doors used as the front public entrance, with signage

2

displaying "AGLER MARKET" posted above the entrance. (See Attachment "A").

D. A **2010 Mercedes-Benz S550 automobile,** black in color, bearing Ohio registration 1PRITIB, (VIN# WDDNG7BB6AA357807). This vehicle is registered to a CATHY FARMER, of 2183 Margo Road, Columbus, Ohio 43229. This said 2010 Mercedes-Benz has been observed by investigators to have been driven on a daily basis by **MARQUIS DESADE FARMER** from his aforesaid described personal residence to various locations located throughout the Greater Columbus, Ohio Area in effort to conduct the submissions of fraudulent SNAP EBT applications and the recertification process of said fraudulent accounts. **MARQUIS DESADE FARMER** is the sole driver of this vehicle. (See Attachment "A").

## SNAP (FOOD STAMP) PROGRAM BACKGROUND

4.    The SNAP is a federally funded, nation-wide program which is jointly administered by the USDA's Food and Nutrition Service (FNS), and delegated state agencies. In the State of Ohio, SNAP is administered by the Ohio Department of Job and Family Services (DJFS). In the State of Washington, SNAP is administered by the Washington State Department of Social and Health Services (DSHS). In the State of Oregon, SNAP is administered by the Oregon Department of Human Services (DHS). In 2001, FNS replaced the original Food Stamp paper coupon system with the present-day Electronic Benefit Transfer (EBT) card system. In Ohio, the SNAP EBT access device is called the *Ohio Direction Card.* In the State of Washington, the SNAP EBT access device is called the *Washington Quest Card.* In Oregon, the SNAP EBT access device is called the *Oregon Trail Card.* State issued SNAP EBT access devices are honored throughout the various 50 states.

5.    The FNS issues participating supermarkets, retail stores, convenience stores and other food retailers, including farmers markets, SNAP vendor authorization numbers which allows them to sell food products to SNAP EBT beneficiaries. To access the electronic funds tied to a SNAP EBT card, authorized vendors must first acquire appropriate processing equipment, typically referred to as a Point of Sale (POS) device. Eligible farmers' markets, direct-marketing

farmers, military commissaries, non-profit cooperatives or organizations, group living arrangements, treatment centers, and prepared meal services are eligible to receive free SNAP EBT processing equipment and services. The POS device is designed to electronically communicate with a U.S. Government contractor who operates and maintains a central computer data processing system that automatically debits recipients' available SNAP balances following authorized food purchases. *Conduent State and Local Solutions* of Austin, Texas is the designated U.S. Government contractor that performs all the data processing for Ohio's SNAP EBT transactions.

6.      Authorized SNAP recipients are issued a plastic EBT card which has an embedded magnetic strip containing all the necessary digital information to complete SNAP EBT food purchases. SNAP EBT cards are similar in nature to commercial debit cards.

7.      Each month, the FNS re-loads the appropriate SNAP benefits onto every EBT card held by authorized SNAP recipients. Authorized SNAP vendors, permit SNAP recipients to swipe their EBT cards through POS devices to complete SNAP purchase transactions. To complete these transactions, the SNAP recipient must first input a personal identification number (PIN). The POS terminal will then electronically communicate with *Conduent's* central database via interstate wire data links verifying the amount of available SNAP benefits in a recipient's account; and if appropriate, authorize the pending sales transaction. As part of this transaction the *Conduent* system will automatically deduct the corresponding purchase amount from the recipient's account, and simultaneously calculate the vendor's SNAP sales amounts. This system will also process the corresponding reimbursement payments for the authorized vendors.

8.      Pursuant to the Food and Nutrition Act of 2008, SNAP recipients are only permitted to exchange SNAP benefits for certain eligible food items in a "real time" basis. Credit transactions are strictly prohibited. Pursuant to federal regulations, SNAP benefits cannot be legally exchanged, redeemed or bartered for certain items, to include cash, alcoholic beverages, tobacco, vitamins, medicine, pet foods, cleaning products and other non-food items.

4

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

9. In July 2021, your Affiant was first contacted by USDA-OIG investigators based in Oregon concerning a SNAP EBT fraud case they were working in conjunction with officials from the Oregon DHS. This investigation identified the prime suspect in this fraud case as a **MARQUIS DESADE FARMER** (hereinafter referred to as "**FARMER**"). According to the Oregon USDA-OIG investigators, **FARMER** is an Ohio resident who has been linked to numerous fraudulent SNAP benefit applications that had been submitted to Oregon DHS over a several year period.

10. Evidence gathered to date by that investigation indicated that probable cause exists to believe that between June 2011 until the present, **FARMER**, together with various other individuals had conspired to illegally prepare and submit false SNAP benefit applications to various state social welfare agencies to include: Ohio DJFS, Oregon DHS, and Washington DSHS. Similar fraudulent applications were also submitted to a host of additional states including: Arizona, Hawaii, Illinois, Oklahoma, Massachusetts, Nevada, Pennsylvania, Texas, North Carolina, and California. A large percentage of these applications contained false, fraudulent and/or stolen personal identification information (PII) of third parties. The prime suspects in the subject SDOHFCTF investigation appear as follows:

//

//

//

//

//

//

//

//

A.    **MARQUIS DESADE FARMER.**



B.    **CATHY CHARLENE FARMER** (hereafter referred to as "**C. FARMER**")



C. **BEYENE T. GOITAM and MAKDA BERHANE** (hereinafter referred to as "**GOITAM**" and "**BERHANE**")



11.     To date, the SDOHFCTF has reviewed a massive amount of SNAP EBT documentation and other data focusing on at least 160 separate individuals who have had their PII used in suspected fraudulent SNAP applications to Ohio DJFS, Oregon DHS and Washington State DSHS.  A majority of these cases were discovered as a result of routine monitoring conducted by government compliance officials located in multiple-states.  As a result of said monitoring, officials observed several suspicious commonalities, to wit:   many applicants were determined to be homeless individuals, mail was commonly returned shortly after the original SNAP benefits were issued, most benefits were opened on-line and many recipients were determined to be receiving duplicate benefits in multiple states.

12.     Most, if not all the applicants appeared to be male individuals with current or one-time residency in Ohio, who receive, or received benefit assistance in the form SNAP and/or Medicaid from the State of Ohio.  A large number of these individuals were identified to reside in the Southern District of Ohio (SDOH).  Fraudulently obtained third party PII was used in multiple SNAP EBT transactions conducted in the City of Columbus, Franklin County, Ohio; the City of Beavercreek, Greene County, Ohio; and the City of Dayton, Montgomery County, Ohio.  Many of

the names used in the applications involve individuals having extensive criminal histories.  A more detailed review of these criminal histories reflect that most of  the underlying criminal cases stemmed from the Columbus, Franklin County, Ohio area.  Some of the 160 individuals are confirmed to be presently incarcerated in Ohio prison or jail institutions.  The names associated with the 160 identified individuals have repeatedly been used to complete fraudulent SNAP applications that were printed, handwritten and submitted via facsimile or an online format.

13.    The Public Assistance Reporting Information System (PARIS) is maintained by the United States Department of Health and Human Services (HHS).  This system is designed to review and cross-check public assistance payments issued to recipients to determine if they are inappropriately receiving duplicate benefits from two or more state jurisdictions.    PARIS is specifically designed to assist state and federal investigators in identifying improper benefit payments to minimize fraud, waste and abuse.    In March of 2022, your Affiant received information from Washington State DSHS indicating they had discovered a large number of duplicate benefit matches among the group of 160 individuals tied to Ohio.  From June 2013 to present, at least 190 matches of duplicate benefits were found among individuals receiving SNAP benefits simultaneously from both Washington State and Ohio agencies.

14.    A review of the handwriting appearing in the various suspect SNAP applications reveal a very distinctive writing style.   The racial designations appearing on these SNAP applications were uniformly listed as African American.

15.    The mailing addresses appearing in the suspect SNAP applications were determined to be from locations associated with businesses and institutions offering  various forms of state social services.  Several contact phone numbers repeatedly appeared on the applications to include: (256) 361-3261, (424) 422-6626, (206) 612-4873, (503) 612-4873, and (215) 820-9138.

16.     **FARMER's** name has surfaced on several of the suspect Oregon DHS and Washington State DSHS benefit applications. Many of these applications included specific contact phone number(s) latter determined to by investigators to be in fact listed under **FARMER's** name.

17.     Through the assistance of the Ohio State Highway (OSP) Patrol Intelligence Unit your Affiant confirmed that telephone number (424) 422-6626 is currently assigned to a **MARQUIS DESADE FARMER** of 3216 Marion PL., Columbus Ohio. The OSP Intel Unit forwarded a screenshot they obtained from LexisNexis of subject **FARMER**. This screenshot originated from a Cash App appearing on a phone or electronic device. This screen shot depicts **FARMER** and several other unidentified individuals with the notation "$1Prettiblaq" appearing under **FARMER'S** name. At the top of this screenshot is the same phone number (424) 422-6626.

18.     SDOHFCTF Agents have reviewed **FARMER'S** public domain social media Facebook account and observed various pictures of **FARMER** flashing large sums of cash and smoking what appeared to be marijuana. Posted photographs further depict **FARMER** possessing Oregon and Washington State EBT cards and wearing a t-shirt depicting the phrase "STARTED FROM THE BOTTOM" and showing a picture of an old food stamp coupon.











13. Additional Facebook pictures were posted which depicts **FARMER** appearing on various airplanes, accompanied with posts referencing air travel to various destinations including

New Orleans, Las Vegas, Washington, New York, Hawaii and Oregon.  In one of these photos **FARMER** is depicted wearing a t-shirt that states "DO I LOOK LIKE I FLY ECONOMY."



14.    Oregon DHS investigators obtained various time-stamped Facebook photos of **FARMER** in Portland, Oregon dated April 22, 2020, September 17, 2020, November 14, 2020, November 19, 2020, December 17, 2020 and February 21, 2021.  A comparison of these date-stamped Facebook pictures to the various known originating dates of certain suspect SNAP benefit accounts, determined that fifteen (15) such cases were opened during the exact time-period **FARMER**  was physically present in the Portland, Oregon area.

//

//

//

//

//

//





15.     On October 2, 2018, a particular SNAP benefits application was filed in the name of Daniel Givens with the Oregon DHS.    This application used the email address of 1prettiblaq@gmail.com.  This email address matches one previously appearing on a Washington State DSHS SNAP benefits application filed in the name **MARQUIS FARMER**.  Agents noticed a striking resemblance between the handwriting in this Washington State application to those

flagged as fraudulent benefit applications submitted in Oregon. Additionally, a Facebook photo dated September 17, 2020, shows **FARMER** wearing a grey T-shirt with the printed words "PRETTIBLAC" on the back of the T-shirt.



16.     Agents reviewed various scanned photographs of identification cards used in the flagged fraudulent benefit applications submitted to Oregon DHS. On at least two occasions, **FARMER** was identified from the picture ID using different names and identifying information for the applications.





17.     During the week of August 9, 2021, SDOHFCTF Agents began surveilling **FARMER'S** apartment located at 3216 Marion Place, Columbus, Ohio 43227.  On multiple occasions, **FARMER** was observed entering and exiting his apartment building through an exterior door marked with the address number "3216/3218".  On these occasions, **FARMER** was observed operating a black, 2010 S550, Mercedes-Benz, 4-door sedan (hereinafter referred to as "the target vehicle").  He was always observed to be the sole occupant of the target vehicle.  When not in use, the target vehicle was parked in the designated parking space marked "3216", which is located directly in front of **FARMER'S** apartment.  The vehicle registration, Ohio vanity plate "1PRITIB" has been determined to be registered to **FARMER'S** sister**, CATHY CHARLENE FARMER** (hereinafter referred to as "**C. FARMER"**) of 2183 Margo Road, Columbus, Ohio 43229.  Agents have determined that the target vehicle has a current estimated fair market value of $18,000.

//

//

//

//

15



18.     On August 25, 2021, the Franklin County, Ohio Court of Common Pleas Court granted a search warrant authorizing SDOHFCTF permission to install a 45-day GPS monitoring device upon the target vehicle.  At approximately 1540 hours on said date, your Affiant observed **FARMER** enter a Columbus Public Library Branch located at 1422 E. Livingston Ave, Columbus, Ohio 43205.  **FARMER** was thereafter observed using a fax machine inside the library.  He remained inside the library for approximately 25-minutes.  Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions to the Oregon DHS.  Your Affiant subsequently reviewed available interior and exterior video surveillance at said library branch and confirmed **FARMER** did in fact use the library fax machine during said time-period. **FARMER** drove the target vehicle to and from this library branch.   **FARMER** was observed carrying documents to and from the target vehicle while at this library branch.

19.     On September 2, 2021, at approximately 0415 hours, agents successfully installed the GPS device upon the target vehicle.   Later that day, at approximately 1025 hours, agents observed **FARMER** enter a Columbus Library Branch located at 3434 E. Livingston Ave,

Columbus, Ohio 43227. **FARMER** was thereafter observed using a fax machine while inside the library and remained inside the branch for approximately 12-minutes. Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions to the Oregon DHS. Your Affiant subsequently reviewed available interior and exterior video surveillance at this library branch and confirmed **FARMER** used a library fax machine during this time-period. **FARMER** drove the target vehicle to and from this library branch. **FARMER** was observed carrying documents to and from the target vehicle while at this library branch.

20.     On September 3, 2021, at approximately 1005 hours, GPS notification indicated that the target vehicle was again present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227. This vehicle remained parked outside this library branch for approximately 10-minutes. Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions from this library branch to Oregon DHS. Your Affiant subsequently reviewed available interior and exterior video surveillance at the listed library branch and confirmed **FARMER** used a library fax machine during this time-period. **FARMER** drove the target vehicle to and from this library branch. **FARMER** was observed carrying documents to and from the target vehicle while at this library branch.

21.     On September 7, 2021, at approximately 1821 hours, GPS notification indicated that the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227. This vehicle remained parked outside this library branch for approximately 20-minutes. Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions from this library branch to Oregon DHS. Your Affiant subsequently reviewed available interior and exterior video surveillance at the listed library branch and confirmed **FARMER** used a library fax machine during this time-period. **FARMER** drove the target vehicle to and from this library branch. **FARMER** was observed carrying documents to and from the target vehicle while at this library branch.

17

22.     On September 9, 2021, at approximately 0927 hours, GPS notification indicated the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227.   The vehicle remained parked outside this library branch for approximately 15-minutes.   Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions from this library branch to Oregon DHS.  Your Affiant subsequently reviewed available interior and exterior video surveillance at the listed library branch and confirmed **FARMER** using the library fax machine during this time-period. **FARMER** drove the target vehicle to and from this library branch.   **FARMER** was observed carrying documents to and from the target vehicle while at this library branch.

23.     On September 14, 2021, at approximately 1210 hours, GPS notification indicated the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227.   The vehicle remained parked outside this library branch for approximately 62-minutes.   Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions from this library branch to Oregon DHS and the Washington State DSHS.  Your Affiant subsequently reviewed available interior and exterior video surveillance at this library branch and confirmed **FARMER** used the library fax machine, with specific computer/printer usage during this time-period.  **FARMER** drove the target vehicle to and from this library branch.   **FARMER** was observed carrying documents to and from the target vehicle while at this library branch.

24.     On September 24, 2021, at approximately 0929 hours, GPS notification indicated the target vehicle was present at a Walmart store located at 3657 E. Main Street, Whitehall, Ohio 43213.  This vehicle remained parked outside the Walmart location for approximately 11-minutes. Your Affiant subsequently reviewed available interior video surveillance at the listed Walmart location and confirmed **FARMER** making a single SNAP EBT purchase using State of Oregon SNAP EBT card #1856.  This SNAP EBT card was issued through the Oregon DHS to a person

18

identified as Daniel Frey. Frey has been determined to be a Caucasian male, who is an Ohio resident, and a current SNAP EBT recipient in the State of Ohio.



25. On October 4, 2021, at approximately 1100 hours, GPS notification indicated that the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227. The vehicle remained parked outside this library branch for approximately 27-minutes. Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions from this library branch to the Oregon DHS. Your Affiant subsequently reviewed available interior and exterior video surveillance at this library branch and confirmed **FARMER** used the library fax machine during this time-period. **FARMER** drove the target vehicle to and from this library branch. **FARMER** was observed carrying documents to and from the target vehicle while at this library branch.

26. The GPS device affixed to the target vehicle on September 2, 2021, was removed by your Affiant on October 4, 2021 at approximately 1125 hours.

27.     On October 19, 2021, your Affiant applied and was granted a 30-day continuation GPS search warrant for the target vehicle by U.S. Magistrate Judge Peter B. Silvain, Jr., of the SDOH.

28.     On October 20, 2021, at approximately 0415 hours, agents successfully installed the GPS device on the target vehicle.

29.     Based on GPS data collected to date, your Affiant has been able to successfully identify frequented "stop locations" visited by **FARMER** in the target vehicle.  These "stop locations" include the personal residences of several individuals believed to be co-conspirators, actively engaged in the subject fraud scheme with **FARMER**.  Other identified "stop locations" commonly corresponded with retail business locations, such as Kroger, Walmart, Gordon Food Service (GFS), Cub Foods and a few smaller-sized, privately owned store markets, all located in the Greater Columbus, Ohio area which are all authorized to accept SNAP/EBT benefits.

30.     Your Affiant has reviewed specific SNAP EBT usage data associated with retail food stores located in close proximity to said frequent GPS "stop locations."  This analysis revealed a multitude of Oregon and Washington State  SNAP EBT cards usage on corresponding dates and times at identified SNAP authorized grocery retailers located in the Columbus, Ohio area.  Agents have also confirmed  an overwhelming number of these said Oregon and Washington State issued SNAP EBT accounts were fraudulently opened by  **FARMER**.

31.     On October 21, 2021, your Affiant obtained Kroger Grocery Store consumer loyalty card information related to multiple SNAP EBT transactions involving Oregon SNAP EBT card #7592, (Bryan Leslie).  This information specifically related to Oregon EBT card #7592 which was previously flagged as being fraudulent by agents, as the application submitted to obtain this card contained a cell phone contact number tied to **FARMER**.  The Kroger loyalty card used in related SNAP EBT transactions involving aforementioned Oregon EBT card #7592 returned to subject **FELICIA PAUL** (hereinafter referred to as "**PAUL**"), an Ohio resident living in the

Columbus, Ohio area. It was determined that **PAUL's** Kroger loyalty card had been used in several SNAP EBT transactions in the Columbus, Ohio area involving Oregon EBT card #7592. Through video surveillance, agents identified **PAUL** and subject **EZRA TOMMY SPENCER DAVIS** (hereinafter referred to as "**DAVIS**"), using Oregon EBT card #7592 on (5) five separate occasions, between September 9, 2021 through November 2, 2021, at various Walmart and Kroger locations in the Columbus, Ohio area.





32. On October 25, 2021, at approximately 1025 hours, GPS notification indicated that the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave,

Columbus, Ohio 43227. Agents observed **FARMER** enter this library. **FARMER** used a fax machine while inside the library and remained inside the branch for approximately 43-minutes. Your Affiant subsequently reviewed available interior and exterior video surveillance at the listed library branch and confirmed **FARMER** used the library fax machine during this time-period. **FARMER** was further observed carrying documents when exiting the library branch and returning to his vehicle. On this date, **FARMER** drove the target vehicle to this library branch. Your Affiant was later contacted by the Oregon DHS officials who provided him with a copy of 1-page letter that was faxed by **FARMER** from this same Columbus Library branch on October 25, 2021 at approximately 1112 hours. This particular fraudulent document was electronically transmitted in an effort to satisfy the SNAP recertification process specific to Washington State EBT card #7800 (John Roberts).

33.     On October 27, 2021, at approximately 0900 hours, GPS notification indicated that the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227. This vehicle remained parked outside this library branch for approximately 90-minutes. Fax transmission reports for this time-period determined that **FARMER** had sent multiple fax transmissions from this library branch to the Oregon DHS and sent at least (1) one on-line SNAP/EBT application to Washington State DSHS. Your Affiant subsequently reviewed available interior and exterior video surveillance at the listed library branch and confirmed **FARMER** used the library fax machine, with specific computer/printer usage during this time-period. Video surveillance also confirmed **FARMER** using a library computer and reviewing a photocopied ID and Social Security card at the computer station. **FARMER** was further observed carrying documents when entering and exiting the library branch from the target vehicle. On this date, **FARMER** drove the target vehicle to this library branch. Your Affiant was later contacted by officials from Oregon DHS and Washington State DSHS who provided him with a copy of the SNAP application information previously faxed and submitted on-line by

22

**FARMER** from this Columbus Library branch on October 27, 2021. Washington State DSHS also received (2) two additional SNAP applications on this date from an internet provider address associated with **FARMER**. On at least one of these SNAP application documents, the phone number of (424) 422-6626 was listed along with the Columbus Metropolitan Library banner printed on the top of the document(s). **FARMER** has repeatedly provided this cell phone number on numerous fraudulent SNAP EBT applications submitted to Oregon DHS and Washington State DSHS officials.



34. On November 5, 2021, at approximately 1020 hours, GPS notification indicated that the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227. Agents observed **FARMER** enter this Library Branch. **FARMER** used a fax machine inside this building. He remained inside this library for approximately a 13-minutes. Your Affiant personally identified and observed **FARMER** use the library fax machine. **FARMER** was further observed carrying documents to and from the target vehicle while entering and exiting this library branch. On this date, **FARMER** drove the target vehicle to this library

branch. Your Affiant was later contacted by Oregon DHS officials who provided him with a copy of the 10-page SNAP application previously faxed by **FARMER** from this Columbus Library branch on November 5, 2021 at approximately 1022 hours. This new SNAP application was submitted under the name of Leroy Knight, with a listed home of residence being a homeless shelter in Tigard, Oregon. This SNAP application was subsequently denied by Oregon DHS due to that fact it was determined Leroy Knight was a deceased person who died in April 2018.

35.     On November 8, 2021, agents discovered the target vehicle had not been operated since on or about November 6, 2021. This vehicle was subsequently located parked in an open access service lot adjacent to the Easton Mercedes-Benz dealership, located at 4300 Morse Crossing, Columbus, Ohio 43219. This vehicle was later determined to be disabled and awaiting substantial repairs.

36.     The GPS device affixed to the target vehicle on October 20, 2021, was removed by your Affiant on November 8, 2021 at approximately 2024 hrs.

37.     On December 3, 2021, your Affiant obtained Kroger consumer loyalty card information related to multiple SNAP EBT transactions involving Washington State EBT card #7800, (John Roberts). Information related to Washington SNAP EBT card #7800 were previously flagged as fraudulent by investigators. The Kroger loyalty card used in related SNAP EBT transactions involving this Washington SNAP EBT card #7800 returns to subject **LEVI SHAY MCCOTTER** (hereinafter referred to as "**MCCOTTER**"), an Ohio resident living in the Columbus, Ohio area. Agents have determined that **MCCOTTER's** Kroger loyalty card has been used in several SNAP EBT transactions in the Columbus, Ohio area involving SNAP EBT card #7800. Through video surveillance, agents identified **MCCOTTER** and a **JEFFREY STEPHEN REID** (hereinafter referred to as "**REID**") using Oregon SNAP EBT card #7800 on (5) five separate occasions, between November 10, 2021 through November 20, 2021, at various Kroger locations in the Columbus, Ohio area.





38. On December 13, 2021, your Affiant reviewed Oregon SNAP EBT card #7592 (Bryan Leslie). This account was determined to be fraudulently opened and maintained by **FARMER**. On December 5, 2021 and December 8, 2021, this SNAP EBT card was used in (2) two separate transactions at Walmart in the Columbus, Ohio area. Upon review of surveillance

footage, agents identified subject **FARMER** using the EBT card to buy grocery items at the listed retailer.





39.     On December 14, 2021, your Affiant applied and was granted a 30-day continuation of the GPS search warrant on the target vehicle by U.S. Magistrate Judge Peter B. Silvain, Jr. of the SDOH.

40.     On December 15, 2021, at approximately 0415 hours, agents successfully installed the GPS device on the target vehicle.

41.     On December 17, 2021, agents reviewed Oregon SNAP EBT card #1835 (Maurice Miller). This account was determined to be fraudulently opened and currently being monitored and maintained by **FARMER**. On December 3, 2021, the listed SNAP EBT card was used in (2) two separate transactions at Walmart in the Columbus, Ohio area. Upon review of surveillance footage, agents identified subject **C. FARMER** using the EBT cards and buying grocery items at the listed retailer.





42.     On January 10, 2022, at approximately 1145 hours, GPS notification indicated the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227. This vehicle remained parked outside this library branch for approximately 15-minutes. There were no apparent fax transmissions sent during this time-period. Your Affiant subsequently reviewed available interior and exterior video surveillance at the listed library branch and identified **FARMER** entering the library and using a fax/copy machine. **FARMER** was observed placing individual items, similar to photographs and/or identification cards on the glass top and making copies of those items. He then retrieved the original copied items from the copier and placed the items in his coat pocket. **FARMER** then retrieved the paper copies from the machine and exited the library. It was confirmed that **FARMER** drove the target vehicle to this library branch. Your Affiant later confirmed that (5) five on-line SNAP/EBT applications were submitted to Washington State DSHS through the internet provider address associated with this Columbus Metropolitan Library branch. On this same date, Washington State

DSHS received (6) six SNAP applications from the internet provider address associated with **FARMER**.

43.     On January 11, 2022, at approximately 1518 hours, GPS notification indicated the target vehicle was present at the Columbus Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio 43227.   This vehicle remained parked outside this library branch for approximately 31-minutes.  There were no fax transmissions sent during this time-period.  Your Affiant subsequently reviewed available interior and exterior video surveillance at the listed library branch and confirmed **FARMER** entering the library and using a fax/copy machine.  **FARMER** was observed making copies and remained at the fax/copy machine for several minutes.  He then retrieved the original document and copied items from the machine and remained inside the library branch for several additional minutes while organizing the documents.  **FARMER** was observed carrying paper documents to and from the target vehicle when entering and exiting this library branch.

44.     On January 12, 2022 at approximately 0216 hours, your Affiant removed the GPS device previously affixed to the target vehicle.

45.     On January 18, 2022, at approximately 1110 hours, an unidentified black male  was observed entering the Hillsboro, Oregon DHS office located at 5300 NE Elam Young Parkway, Hillsboro, Oregon 97124.  This person requested an Oregon SNAP EBT card be issued in reference to Oregon DHS case #F86282781.  This account was held in the recipient name of Leroy Knight. The Oregon DHS case worker assisting this person determined that Leroy Knight was listed as a deceased person in DHS computer system.  As such, the case worker advised the customer that a SNAP EBT card could not be issued until additional verification was completed.  At that point, the unidentified subject abruptly departed the DHS office.  Closer examination of this case number and recipient account information confirmed that Knight died in April 2018.  DHS officials retrieved the 10-page SNAP EBT application originally submitted in Knight's name.   The

document reflected it had been faxed from a Columbus, Ohio library location on November 5, 2021 at approximately 1022 hrs. Your Affiant personally witnessed **FARMER** sending this same application the Columbus Barnett Library Branch, located at 3434 E. Livingston Ave, Columbus, Ohio to the Oregon DHS on November 5, 2021. On or about January 18, 2022, Oregon DHS management officials displayed Facebook photos of **FARMER** to the said case worker. The case worker opined that unidentified subject attempting to obtain the Oregon SNAP EBT card in the recipient name of Leroy Knight was the same person depicted in the Facebook photos. Your Affiant was able to confirm through Facebook posts that **FARMER** was physically in Oregon on January 18, 2022. Oregon DHS officials were also able to determine that **FARMER** stayed at the Crowne Plaza Hotel in Portland, Oregon from January 18, 2022 through January 21, 2022. This hotel is located approximately 19 miles from the Hillsboro, Oregon DHS Office.

46. On February 9, 2022, law enforcement agents conducted surveillance of **FARMER**, at his apartment located at 3216 Marion Place, Columbus, Ohio. At approximately 0915 hours, **FARMER** was observed outside this apartment building in the adjacent parking lot, standing next to the target vehicle. **FARMER** was the only individual observed near the vehicle at this time while the vehicle was parked in a designated parking space marked "3216." **FARMER** later entered the common doorway marked 3216/3218 leading to his upstairs apartment.

47. On February 28, 2022, law enforcement agents conducted surveillance of **FARMER**, at 3216 Marion Place, Columbus, Ohio 43227. At approximately 1323 hours, **FARMER** was observed driving the target vehicle into the apartment complex and parked vehicle in designated parking space marked "3216." **FARMER** exited this vehicle carrying miscellaneous items and checked the mailbox affixed to the exterior of the apartment building adjacent to common doorway leading to apartments 3216/3218. **FARMER** was then observed entering the apartment building. Agents observed a handwritten note placed on specific mailbox checked by

**FARMER** that requested UPS deliveries be placed inside common hallway of building.  This note was purportedly completed by **FARMER**.

48.  On March 23, 2022, an unidentified black male entered the Oregon DHS East Office Branch located at 11826 NE Glisan Street, Portland, Oregon 97220.  This person requested a replacement Oregon EBT card in reference to Oregon DHS case #40188306.  This account was held in the recipient  name of Jujuan Cochran and flagged by Oregon DHS as a potentially fraudulent account related to **FARMER** and this investigation.  The replacement EBT card was issued to the unidentified subject on the listed date, and a subsequent review of the case notes for this account later questioned the identity of the subject requesting the replacement card.  On or about March 23, 2022, Oregon DHS management officials displayed Facebook photos of **FARMER** to the case worker.  The case worker opined that the unidentified subject receiving the Oregon SNAP EBT card in the name of Jujuan Cochran was the same person depicted in the Facebook photos.  Your Affiant was able to confirm through Facebook posts that **FARMER** was physically in Oregon during the said time-frame.  Your Affiant has located a Washington State DSHS SNAP EBT account in the name of Jujuan Cochran with the same PII as the aforementioned Oregon DHS SNAP EBT account.  Document review of both SNAP EBT accounts determined that they were fraudulently opened and currently being monitored and maintained by **FARMER**.

## SUPPLEMENTAL SECURITY INCOME FRAUD

49.  Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383 establishes a "needs based" supplemental security income (SSI) program which is administered by the Social Security Administration (SSA).  It is designed to assist poor, aged, blind, and/or disabled persons. To receive SSI benefits, applicants must establish certain eligibility requirements concerning certain income and personal asset thresh holds. SSI recipients are required to accurately and timely report personal income, cash assistance, and other transactions that may affect their eligibility for

benefits. The SSA periodically conducts redetermination of benefits interviews with SSI recipients to ensure their continuing eligibility for benefits.

50.     On November 13, 2018, **FARMER** was awarded SSI benefits. At that time SSA officials advised him of his continuing responsibility to timely report new or additional  sources of income to the SSA. Specifically he was advised he had to report any significant changes in his personal income, financial assistance, employment, or other resources to the SSA.  He was repeatedly advised of this reporting requirement in various Cost of Living Adjustment Notices he received from the SSA in 2018, 2019, 2020, and 2021.

51.     SDOHFCTF Agents have completed an in-depth review of **FARMER's** financial, tax and bank records.  They have been unable to identify any legitimate employment or other source of legitimate earned income for **FARMER** from 2018 until the present.

52.     **FARMER's** bank records reveal significant cash deposits and account transfers dating from at least April, 2019 through September, 2021. **FARMER** has never reported the existence of any of these deposits or transfers to SSA officials. On December 16, 2021, **FARMER** falsely advised SSA officials during a redetermination of benefits interview that he had not received any additional income or assistance other than SSI benefits.

53.     As a result of **FARMER's** intentional concealment of financial assets/income, between the time period of June, 2019 through September, 2021 **FARMER** fraudulently received approximately $10,715.93 in SSI benefits.  On December 16, 2021, **FARMER** again made false statements under penalty of perjury to the SSA indicating he had not received any other income during the relevant reporting time period.   On June 20, 2021, the below photo was posted on the public domain side of **FARMER'S** Facebook account.



**AGLER MARKET**

54.     On July 19, 2016, the AGLER MARKET of 2043 Agler Road, Columbus, Ohio 43224 filed an application with the Ohio Secretary of State's Office to become a domestic limited liability company.  In this filing, **MOHAMMED ENAYA** (hereinafter referred to as "**ENAYA**") was named as the statutory business agent.  On July 27, 2017**, GOITAM** replaced **ENAYA** as the listed statutory business agent.

55.     On October 31, 2016 the AGLER MARKET filed a "USDA-SNAP Application for Stores".  In this filing, both **GOITAM** and **ENAYA** were listed as "co-owners" of the  business. In this application, **GOITAM** listed his residential address as 8471 Rodebaugh Road, Reynoldsburg, Ohio 43068.

56.     By completing the USDA-SNAP Application for Stores" both **GOITAM** and **ENAYA** certified the accuracy of all the information contained in the document.  They  further agreed, as co-owners to be liable for any and all illegal and/or fraudulent SNAP related activities committed by any of their store employees or representatives of the business.

57.     On or about December 23, 2016, FNS officials performed an on-site visit at the AGLER MARKET business premises.  During this visit, **ENAYA** received a detailed briefing regarding the various SNAP rules and requirements authorized vendors were expected to comply with.   FNS officials additionally provided **ENAYA** with specific SNAP training manual materials designed to ensure AGLER MARKET's future compliance with all SNAP requirements.

58.     On or about January 4, 2017, FNS formally approved AGLER MARKET's application to become an authorized SNAP vendor.  The store was issued FNS number 0565950.

59.     On or about December 8, 2020, **GOITAM** submitted a notarized letter to FNS officials indicating that he was now the sole owner of AGLER MARKET.  This letter indicated that **ENAYA** was no longer associated with the business.

60.     On December 7, 2021, your Affiant reviewed the account records associated with Oregon SNAP EBT cards #1381, 5344, 4858, 6772 and Washington State SNAP EBT card #6654.  These accounts were determined to be fraudulently opened.  Each of these accounts are currently being maintained by **FARMER**.  Between October 18, 2021 through November 13, 2021, the aforesaid listed SNAP EBT cards were used in (4) four separate transactions conducted at Walmart and Kroger Stores located in the Columbus, Ohio area.  Upon review of relevant store surveillance camera footage, agents identified subjects **GOITOM** and **BERHANE** participating in separate dated transactions using the aforementioned SNAP EBT cards to purchase bulk grocery items.  Agents have confirmed that **GOITOM** is in fact presently the owner of the AGLER MARKET, and **BERHANE** his wife, is regularly employed at the business.

61.      On at least eight (8) separate occasions, the AGLER MARKET business location has appeared as a GPS "stop location" for **FARMER's** target vehicle.  Agents believe **GOITOM** had been purchasing SNAP EBT cards from **FARMER**, and using the illicit SNAP EBT benefits to in-turn purchase bulk items to restock their store inventory.







62. On February 9, 2022, task force agents conducted surveillance of **GOITAM** and **BERHANE**, at their 8471 Rodebaugh Road, Reynoldsburg, Ohio 43068 residence. At approximately 1248 hours, **GOITAM** departed this residence driving a silver 2003 Toyota 4-door, Ohio registration FBA5615, registered to **BERHANE** of the same address. This vehicle was observed traveling to an ALDI Store located at 8301 E. Broad Street, Reynoldsburg, Ohio 43068. **GOITAM** was thereafter observed purchasing bulk food items from this ALDI Store, and then traveled to the AGLER MARKET where he unloaded these same items, taking them inside the business premises.

63. On February 11, 2022, agents again conducted surveillance of **GOITAM** and **BERHANE** at the AGLER MARKET. At approximately 1100 hours, your Affiant entered the business and identified the on-duty female clerk as **BERHANE.** Your Affiant inquired of **BERHANE** whether she was the only employee working at the store. She responded that "Ben's

coming later" in the day. During this conversation, a silver 2003 Toyota 4-door, bearing Ohio registration FBA5615 was observed parked in front of the AGLER MARKET. This vehicle is registered to **BERHANE** with a listed home address 8471 Rodebaugh Road, Reynoldsburg, Ohio 43068.

64.     At approximately 1200 hours, on this same date, agents observed **GOITAM** depart his residence driving a gray 2015 Toyota SUV, Ohio registration FZJ2321. This vehicle is registered to **BERHANE** with the listed home address 8471 Rodebaugh Road, Reynoldsburg, Ohio 43068. **GOITAM** traveled to both the said ALDI Store and a Meijer Store located at 8000 E Broad Street, Reynoldsburg, Ohio 43068. **GOITAM** purchased bulk food items at each location and then proceeded to the AGLER MARKET where he was observed unloading these grocery items inside the business.

65.     On or about March 3, 2022, **GOITAM** prepared and submitted a "USDA-SNAP Reauthorization Application for Stores" on behalf of the AGLER MARKET. On this form **GOITAM** listed himself as the sole owner of the AGLER MARKET and provided his residential address on as 8471 Rodebaugh Road, Reynoldsburg, Ohio 43068.

66.     By completing this "USDA-SNAP Reauthorization Application for Stores" **GOITAM** certified the accuracy of the information contained therein. He further agreed as owner of the AGLER MARKET, he would be held liable for any and all illegal and/or fraudulent SNAP related activities committed by any store employees or representatives.

67.     On March 29, 2022, task force agents conducted surveillance of **GOITAM** and **BERHANE**, at their 8471 Rodebaugh Road, Reynoldsburg, Ohio 43068. At approximately 0805 hrs, **GOITAM** departed this residence driving a silver 2003 Toyota 4-door, Ohio registration FBA5615, registered to **BERHANE** of the same address. This vehicle was observed traveling to AGLER MARKET where GOITAM opened the business premises.

68.     Between September 2018 through March 2022, your Affiant determined that the AGLER MARKET completed in excess of 275 separate SNAP EBT transactions using approximately 57 individual Washington State SNAP EBT cards.  The overwhelming majority of the Washington State SNAP EBT cards transacted through the AGLER MARKET can be tied to **FARMER**.  Specific data related to these 275 transactions reflect they consisted of small dollar purchases or card balance inquiries.  Based upon your Affiant's prior training, knowledge and experience, he has become aware such small dollar purchases are commonly used when criminals are attempting to determine what the current balance may be on a SNAP EBT card prior to engaging in illicit transactions.

### The Use of Internet Provider (IP) Addresses

69.     During the course of this investigation, your Affiant has received information from Washington State DSHS officials that indicate that a majority of the fraudulent SNAP/EBT applications associated with subject investigation were submitted and recertified on-line using the Washington Connection.org website.  This website was designed to provide a convenient way for needy families and individuals to apply for a variety of services such as food and cash assistance.  As a result, several IP addresses were flagged by officials as being involved in the illicit submission of numerous on-line SNAP/EBT applications through the Washington Connection website.  Oftentimes, multiple applications for assistance are submitted from the same IP address on the same date.  More recently, a pattern of mid-month  bursts of activity have been detected associated with some of these identified IP addresses.



Marquis Farmer

160+ Identities used by Farmer to obtain fraudulent SNAP benefits

Applications faxed to Oregon from the Columbus Library

EBT applications submitted on-line from Farmer's residential IP's 65.60.179.160, 67.149.222.135, 65.60.250.88 & Columbus Library IP's 66.213.29.74, 66.213.29.23, 66.213.29.33, 66.213.29.39

EBT Cards sent to Ohio from Oregon and Washington

Oregon State: Over $171,000 in fraudulent SNAP benefits issued

Washington State: (Over 749 total on-line interactions with fraudulent EBT applications submitted)

WA and OR EBT cards ran through Agler Market

Over 18 individuals identified as using the fraudulent EBT cards obtained by stolen Ohio identities

Owner of Agler Market (Goitam and Berhane) used fraudulent EBT cards to stock Agler Market

70. The above chart depicts the following:

a. Between October 2018 and March 2022, a total of 749 on-line interactions were captured involving IP addresses where suspected fraudulent EBT applications and associated documents relating to the identified 160 individuals with ties to Ohio were submitted to the Washington Connection.org website.

b. During said time frame, a large number of the suspected fraudulent SNAP/EBT applications were submitted from the following IP addresses returning to both **FARMER** and Columbus Library Branches frequented by **FARMER**.

c. Wide Open West Internet Provider addresses 65.60.179.160, 67.149.222.135, 65.60.250.88 held in the name "**MARQUES" FARMER** had at least 115 combined on-line interactions where EBT applications and associated documents where submitted to the Washington Connection.org website.

d. Columbus Library Internet Provider addresses 66.213.29.74, 66.213.29.23, 66.213.29.33, 66.213.29.39 belonging to (4) four Columbus Library branch locations had at least 103 combined on-line interactions where EBT applications and associated documents where submitted to the Washington Connection.org website.

e. AGLER MARKET Owner **GOITAM** and wife **BERHANE**, are illegally using EBT cards fraudulently obtained by **FARMER** and directly related to the stolen identities of the 160 individuals with ties to Ohio. These cards are used to purchase bulk food items and stock store inventory at AGLER MARKET. The fraudulent EBT cards are also exchanged with various pedestrian individuals and used at other retailers in the Columbus, Ohio area.

71. During this investigation, your Affiant obtained the following IP subscriber/ customer information as it relates to the aforementioned IP addresses and learned the following:

- IP addresses **65.60.179.160/67.149.222.135/65.60.250.88** are held under Wide Open West (WOW) Internet Provider. Specific customer account information related to these IP addresses are in the name of "**MARQUES" FARMER**, 3216 Marion Place, Columbus, Ohio 43227, 424-422-6626, SSN: 8907. Equipment Maintenance/Inquiry from WOW shows that internet equipment was most recently installed at this residence on May 07, 2020 and that the account is currently active. Your Affiant has confirmed that the WOW subscriber information related to these IP addresses, to include the listed phone and social security number return to **FARMER**. The listed phone number of 424-422-6626 has consistently been used as primary contact information on a multitude of fraudulent SNAP/EBT applications and associated documents submitted to Oregon and Washington State.

40

72.     Based on the above listed facts and circumstances, the subject investigation has been able to confirm that since June 2011, **FARMER** has, and continues to actively submit fraudulent SNAP benefit applications to Oregon DHS and Washington State DSHS officials using, in part, the PII of third parties. The subject investigation as further confirmed that **FARMER** has consistently used the target vehicle which is registered to his sister, **C. FARMER**, to facilitate these illegal activities.

73.     **FARMER'S** illegal activities have been corroborated through the use of the GPS devices which have previously installed on the target vehicle on the following dates:

- September 2, 2021 through November 8, 2021

- October 20, 2021 through November 8, 2021

- December 15, 2021 through January 12, 2022

74.     From July 2021 to present, **FARMER** exclusively used the target vehicle on a daily basis. On-site surveillance, added by GPS surveillance has established that **FARMER** frequented two (2) different Columbus Area Public Library Branches on eleven (11) different dates, for the express purpose of electronically transmitting fraudulent SNAP applications across state lines to Oregon DHS and Washington State DSHS officials. **FARMER's** transmission of said fraudulent documents was for the express purpose of applying for, establishing and re-certifying fraudulent SNAP EBT accounts.

75.     From July 2021 to present, **FARMER** possessed and used many of the fraudulently obtained SNAP EBT cards for his personal use and benefit. On September 24, 2021, and December 13, 2021, **FARMER** was identified using and completing multiple transactions involving Oregon SNAP EBT cards #7592 (Bryan Leslie) and #1856 (Daniel Frey). These listed SNAP EBT cards return to (2) two Ohio residents who had their identities stolen. Oregon SNAP account/EBT card #7592 (Bryan Leslie) and card #1856 (Daniel Frey) were determined to be fraudulently opened and currently monitored and maintained by **FARMER.**

41

76.     On-site surveillance together with collected GPS data has identified various "stop locations" visited by **FARMER**. This data helped identify suspected co-conspirators **GOITAM** and **BERHANE** of the AGLER MARKET.  Both **GOITAM** and **BERHANE** continue using SNAP EBT cards obtained by **FARMER** to purchase bulk food items to re-stock the AGLER MARKET inventory.   The AGLER MARKET has transacted in excess of 275 individual SNAP EBT transactions using approximately 57 fraudulent  Washington State SNAP EBT cards.  Based on reviewed transaction data, the AGLER MARKET has served as a distribution hub for fraudulent SNAP EBT accounts/cards tied to **FARMER**.

77.     Retail businesses, such as Kroger, Walmart, Gordon Food Service (GFS), Cub Foods and a few smaller-sized, privately owned store markets, all located in the Columbus, Ohio area and authorized to accept SNAP/EBT benefits, were identified through surveillance and GPS monitoring, as businesses that both **FARMER** and co-conspirators used to facilitate transactions involving fraudulent SNAP EBT accounts.

## AFFIANT'S TRAINING AND EXPERIENCE

78.     Based on my prior training, experience and participation in hundreds of white collar fraud investigations, together with the shared experience and knowledge of other SDOHFCTF agents and officers, the following facts are known:

a.      That both authorized/non-authorized FNS retailers typically maintain books and records in the normal course of business. These books and records relate to a business cycle, usually spanning a twelve-month period.  Retail grocery stores/delivery route vendors typically maintain inventory controls identifying beginning and ending inventories relating to a business cycle. These books and records are typically physically maintained at the business premises, or the personal residence of the business owner and/or business manager.

b.      That it is common for individuals involved in SNAP EBT trafficking and related fraudulent activities to maintain books, records, ledgers, notes, receipts, etc., relating to the acquisition, movement, conversion, secreting, transfer and disbursement of SNAP EBT benefits, and/or currency.

c.     That individuals involved in SNAP EBT and/or WIC trafficking and related activities typically conceal SNAP EBT cards, WIC Program cards, currency, cashier's checks, money orders, other negotiable instruments as well as the records pertaining to credit extended to customers and other records that are identified above relating to the acquisition, conversion, movement, secreting, transfer and disbursement of these monetary instruments in their business premises, personal residences, and other locations that they own, and/or control access to and from.

d.     That it is common for individuals involved in SNAP EBT trafficking and related activities to maintain lists of names, addresses, and/or telephone numbers of their customers and associates in their organization, in books, papers and/or electronic media.

e.     That it is common for individuals involved in SNAP EBT trafficking and related activities to transfer the SNAP EBT cards and WIC vouchers to affiliated stores to mislead government investigators as to the true magnitude of their illegal activities at that place of business.

f.     It is typical for said individuals to commonly keep and maintain within their place of business and residence, business and financial records for extended periods of time, even as long as several years, for daily and long-term references to assist in making business decisions and operational needs as well as preparation of tax documents.

g.     It is typical for said individuals to maintain records of personal expenditures and income at their private residences, that reflect the amount and disposition of the proceeds of their criminal activity.

h.     It is typical for individuals who embezzle money, particularly in the form of U.S. currency, to refrain from depositing all of it into bank accounts for fear of alerting authorities. As such, cash embezzlers often retain and secrete bulk currency at their residences, in safes, vehicles, etc.

i.     In the modern era, most business people typically bank on-line, conduct transactions on-line, make travel arrangements, access to overseas banks and check credit card statements on-line.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

79.     This application seeks permission to search for, and seize various types and categories of records expected to be located and found in subject target premises and inside the listed target vehicle. One form in which the sought after records might be found is in an electronic format, i.e. in a computer's hard drive or other electronic storage media. Some of these electronic

43

records might take the form of files, documents, and other data that is user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon a forensic examination and analysis. I submit that if a computer or storage medium is found on the target premises, there is probable cause to believe such records will be stored in that computer or storage medium, for at least the following reasons:

    a.    Based on my prior knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

    80.    This application seeks permission to locate search and seize not only computer files that might serve as direct evidence of the crimes described in this supporting affidavit and proposed warrant, but also for evidence that establishes how computers were used, the purpose of their use, who used them, and when.

81.     Although some of the records sought in this application might be found in the form of user-generated documents (such as word processor, picture, and movie files), computer storage media can contain other forms of electronic evidence as well:

a.      Forensic evidence of how computers were used, the purpose of their use, who used them, and when, is called for by this warrant. Data on the storage medium not currently associated with any file can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.      Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, and correspondence (and the data associated with the foregoing, such as file creation and last accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance with particularity a description of the records to be sought, evidence of this type often is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand the evidence described in Attachment B also falls within the scope of the warrant.

e.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing

45

is not present on a storage medium. For example, it is possible that malicious software can be installed on a computer, often without the computer user's knowledge, that can allow the computer to be used by others, sometimes without the knowledge of the computer owner. Also, the presence or absence of counter-forensic programs (and associated data) that are designed to eliminate data may be relevant to establishing the user's intent. To investigate the crimes described in this warrant, it might be necessary to investigate whether any such malicious software is present, and, if so, whether the presence of that malicious software might explain the presence of other things found on the storage medium. The mention to the possible existence of malicious software is a theoretical possibility, only; this will not be known until a forensic analysis is conducted, whether malicious software is present in this case.

82.     Searching the specific said storage media for evidence described in the relevant attachments to this application may require a range of data analysis techniques. It is possible that the storage media located on the target premises may contain files and information that are not otherwise sought by this warrant. In rare cases, when circumstances permit, it is possible to conduct carefully targeted searches that can locate sought after evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, it is possible, though rare, for a storage medium to be organized in a way where the location of all files and data called for by the warrant are immediately apparent. In most cases, however, such techniques may not exclusively yield the evidence described in and sought by the warrant. For example, information regarding user attribution or Internet use is located in various operating system log files that are not easily located or reviewed. As explained above, because a warrant calls for records of how a computer has been used, what it has been used for, and who has used it, it is exceedingly likely that it will be necessary to thoroughly search storage media to obtain evidence, including evidence that is not neatly organized into files or documents. Just as a search of a premises for physical objects requires searching the entire premises for those objects that are described by a warrant, a search of this premises for the things described in this warrant will likely require a search of the data stored in electronic storage media for the things (including electronic data) called for by this application. Additionally, it is possible that files have

been deleted or edited, but that remnants of older versions are placed in unallocated space or slack space. This, too, makes it exceedingly likely that in this case it will be necessary to use more thorough techniques.

83. Based upon my prior knowledge, training and experience, I know that a thorough search for information stored in storage media often requires agents to seize most or all storage media to be searched later in an off-site, controlled environment. This is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. Additionally, to properly examine the storage media in a controlled environment, it is often necessary that some computer equipment, peripherals, instructions, and software be seized and examined in the controlled environment. This is true because of the following:

    a.    The nature of evidence. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.

    b.    The volume of evidence. Storage media can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to peruse all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

    c.    Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on-site. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    d.    Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

47

84. In light of these concerns, I hereby request the Court's authorization to seize relevant computer hardware, storage media, and associated peripherals, to include cellular phones expected to be found at the target premises and target vehicles that are believed to contain some or all of the evidence described in the application, and to conduct an off-site search of the hardware for the evidence described, if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to search the hardware, media, or peripherals on-site for this evidence.

85. Because several people may share the target premises (business premises and residence) and target vehicle, it is possible that the target premises and vehicle will be found to contain computers and other electronic storage media that are predominantly used, and/or perhaps owned, by third persons who are not otherwise connected with this investigation and the specific crimes being investigated as listed in paragraph 2 of this supporting affidavit. If agents conducting the search nonetheless determine that it is possible that the sought after listed items of evidence could be found on any of those computers or storage media, this application seeks permission to search, and if necessary to seize those computers or storage media as well. It may be impossible to immediately determine, on scene, which computers or storage media actually contain the items of evidence sought and described in this warrant. If, any computer or electronic storage device has to be seized, the said computer and storage device and its components may be searched and analyzed at an offsite controlled location as authorized by the search warrant that may be issued pursuant to this affidavit.

86. It may become necessary to open, search, and remove from the target premises and vehicle a safe or other locked receptacle or compartment, as some or all of the sought after items be contained inside such receptacles. SAs from the USDA-OIG, USSS and Agents from the ODPS Ohio Investigative Unit, should be authorized to use the services of locksmiths, who may not necessarily be State or federal law enforcement officers, in order to properly open and search said safe or other locked receptacles or compartments found on the premises, or off premises,. In the

48

event the services of locksmiths become necessary, they will operate under the strict direction, control and supervision of appropriate SAs from the USDA-OG, USSS and Agents from the ODPS Investigative Unit.

## **CONCLUSION**

87.     Based upon the evidence set forth in this affidavit, your Affiant respectfully submits that probable cause does exist to believe that criminal evidence, contraband, fruits of crime, items illegality, and property used, intended to be used or otherwise used in committing violations of the following listed federal statutes, including but not limited to, the Conspiracy to Defraud the United States and commit Wire Fraud, in violation of 18 U.S.C. § § 371 and 1349; Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of SNAP benefits, in violation of 7 U.S.C. § 2024 (b) and (c);  Theft of Public Money, in violation of 18 U.S.C. § 641; Making  False Statements, in violation of 18 U.S.C. § 1001; Access Device Fraud, in violation of 18 U.S.C. § 1029; Wire Fraud, in violation of 18 U.S.C. § 1343; Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and Supplemental Security Income Fraud, in violation of 42 U.S.C. § 1383A, will be found at the following subject target premises and in the following subject target vehicle:

A**.**     The residence of **MARQUIS DESADE FARMER**, located at **3216 Marion Place, Columbus, Ohio 43227**;

B.     The residence of AGLER MARKET employee/operator/owner **BEYENE T. GOITAM** and **MAKDA BERHANE**, located at **8471 Rodebaugh Road, Reynoldsburg, Ohio 43068**;

C.     The commercial business establishment known as the **AGLER MARKET**, located at **2043 Agler Road, Columbus, Ohio 43224**;

D.     A **2010 Mercedes-Benz S550, black in color, Ohio registration 1PRITIB, (VIN# WDDNG7BB6AA357807**) registered to **CATHY FARMER**, 2183 Margo Road, Columbus, Ohio 43229.  The 2010 Mercedes-Benz is driven daily by **MARQUIS DESADE FARMER** from his personal residence to various locations in effort to prepare and file fraudulent SNAP EBT applications and complete the recertification process of said fraudulent accounts.  **MARQUIS DESADE FARMER** is the sole driver of this vehicle.

88. Based upon the evidence set forth in this affidavit, your Affiant respectfully requests the issuance of search warrants for above referenced premises and vehicle; and additionally requests the issuance of an arrest warrant for **MARQUIS DESADE FARMER.** I further request that this supporting affidavit, accompanying search warrant applications and criminal complaint be sealed until further order by this Court.

Respectfully submitted,

Gregory E. Engelhard
Special Agent
USDA, Office of Inspector General

Subscribed and sworn to before me on this _31st_ day of March, 2022.

Peter B. Silvain, Jr.
United States Magistrate Judge

50